IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| YONG NAM WILSON, as administrator of the Estate of Lemuel Keith Wilson, Deceased, JESSICA BATES as natural guardian and next friend of T.S.W., a minor child of the Deceased and LATRICE WILLIAMS as natural guardian and next friend of M.W., a minor child of the Deceased,<br><br>           Plaintiffs,<br><br>v.<br><br>MATTHEW MILLER, individually and in his official capacity as a Police Officer of the City of Pelham, NEALIE MCCORMICK individually and in his official capacity as Chief of Police of the City of Pelham; and CITY OF PELHAM, a municipal corporation of Georgia;<br><br>           Defendants. | Case No.: 1:14-cv-10 (WLS) |

## ORDER

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Doc. 50) and Defendants' Motion for Summary Judgment (Doc. 47). For the following reasons, Plaintiffs' Motion (Doc. 50) is **DENIED** and Defendants' Motion (Doc. 47) is **GRANTED**.

## PROCEDURAL HISTORY

On January 13, 2014, Plaintiffs filed this case asserting both Georgia and federal law claims against Defendants. Their claims arise from the 2012 shooting and death of Lemuel Keith Wilson. (Doc. 1.) On January 15, 2014, Plaintiffs filed their First Amended Complaint. (Doc. 6.) On March 7, 2014, Defendants filed a Partial Motion to Dismiss several claims in

1

the amended complaint. (Doc. 16.).  On October 22, 2014, Plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 38).  On October 29, 2014, the Court granted that Motion and ordered Plaintiffs to submit their amended complaint within fourteen days.  The Plaintiffs did not file an amended complaint following entry of the Court's October 29, 2014 Order.  Upon reviewing the docket and noting that Plaintiffs had failed to file their amended complaint after being granted leave to do so, the Court ordered Plaintiffs to submit their Second Amended Complaint.  Plaintiffs submitted their Second Amended Complaint (Doc. 42), and the Court dismissed Defendants' Partial Motion to Dismiss (Doc. 16) as moot. (Doc. 43.)

On December 30, 2014, Defendants' filed a new Partial Motion to Dismiss some of the claims asserted in the Second Amended Complaint (Doc. 44).  On March 16, 2015, the Court granted-in-part and denied-in-part Defendants' Partial Motion to Dismiss, dismissing Plaintiffs' Fourth Amendment claims for unlawful arrest against Miller, Plaintiffs' state law claims against Defendant McCormick in his individual capacity for failure to train and properly supervise, as well as any associated damages claims set forth in Counts Twelve and Thirteen, and Plaintiffs' claim for punitive damages against the City of Pelham.

On January 26, 2015, Defendants filed a Motion for Summary Judgment as to all of Plaintiffs' remaining claims. (Doc. 47.)  On February 20, 2015, Plaintiffs filed their response, and on March 23, 2015, after being granted an extension of time, Defendants filed their reply. (Docs. 63, 72.)  Also on January 26, 2015, Plaintiffs filed a Motion for Partial Summary Judgment as to Counts One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve. (Doc. 50.)  On March 3, 2015, after being granted an extension of time, Defendants filed their response, and on April 3, 2015, after being granted an extension of time, Plaintiffs filed their reply. (Docs. 67, 74.)  The Court finds that the Motions for Summary Judgment are now ripe for review.

## **FACTUAL HISTORY**

The following facts are derived from Defendants' Statement of Material Facts to Which There Is No Genuine Dispute (Doc. 47-2), Plaintiffs' Response (Doc. 64), Plaintiffs' Statement of Material Facts to Which There Is No Genuine Dispute (Doc. 50-1), and

Defendants' Response (Doc. 68), all of which were submitted in compliance with M.D. Ga. L.R. 56.  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In particular, the Court notes an audio file submitted by Plaintiffs containing Pelham Police radio calls from March 2, 2012 beginning at 4:57 PM and ending at 6:26 PM.  Although Plaintiffs do not specifically reference this audio file as an exhibit in their briefing, it was submitted along with Document 64, and the Court found it particularly corroborative of portions of Miller's deposition testimony.

On March 2, 2012, the Pelham Police Department received a report that a naked man was running in the area of Liberia Street in Pelham, Georgia. Officers Wanda Rickerson and Sergeant David Cook responded.  Officer Rickerson proceeded to Liberia Street to find the residence of the 911 caller.  Sergeant Cook patrolled the area, asking people whether they had seen the naked man.  Sergeant Cook radioed for Defendant Matthew Miller, an investigator with the Pelham Police Department, to bring a four-wheeler vehicle to the scene to assist in locating the naked man.  Miller left the station in a four-wheeler and went to the scene.

Upon arriving at the scene, Miller spoke with the 911 caller at her residence, which was very close to the city limits.  The woman told Miller that she had observed the naked man run through her yard and into the woods nearby.  Miller parked the four-wheeler outside the woods and went into the woods alone and on foot to search for the naked man. Miller informed Rickerson that he was doing so. Officers Rickerson and Cook did not accompany Miller into the woods. Miller carried a firearm as his only weapon and tool for restraint.  Miller did not know whether he was within the Pelham city limits while in the woods.  Meanwhile, Rickerson went to Cemetery Road where she believed the naked man might emerge from the woods, and Cook continued patrolling Cemetery Road, Mize Street, School Street, and Liberia Street.

3

When Miller entered the woods, around 5:00 PM, it was daylight. After searching the woods for several minutes, Miller heard someone yell "hey" from behind him. Miller turned around and saw the naked man, later identified as Lemuel Keith Wilson, crouching about fifty yards away. Around 5:09 PM, Miller radioed that he had made contact with the naked man. Miller walked towards Wilson and asked him if everything was alright. Wilson responded by asking Miller if he had a gun. Miller stopped walking towards Wilson and informed him that he did have a gun. Wilson then asked Miller if he felt like using the gun, to which Miller responded that he did not. Wilson told Miller he would have to use his gun to kill him or Wilson would kill Miller.

Wilson then stood up and started approaching Miller with his fists closed. Miller could see that Wilson had something clinched in his left hand but could not tell what it was. Miller started backing up while talking Wilson, attempting to calm him down. Miller removed his firearm from its holster and aimed it toward the ground. Miller continued to back up and attempt to calm Wilson down while Wilson continued to close the distance between them. In the minute or so that elapsed after Miller's first contact with Wilson, Miller radioed for backup multiple times and stated that Wilson had threatened to kill him. Wilson continued approaching Miller and said, "It's too late," and, "They're coming for me." Wilson lunged toward Miller with his arms stretched out. From around six feet away, Miller fired two rounds from his firearm, hitting Wilson. Around 5:10 PM, Miller radioed that shots had been fired in Pelham. Wilson was transported to the hospital where he was pronounced deceased.

Wilson weighed around 145 pounds and was five feet, eleven inches tall, and Miller weighed around 185 pounds and was five feet, eight inches tall at the time of the incident. The object clinched in Wilson's left fist was later discovered to be a roll of over sixty $20 bills. Plaintiff Yong Nam Wilson is the administrator of Lemuel Wilson's estate. Plaintiffs T.S.W. and M.W. are the minor children of Lemuel Wilson. Defendant Nealie McCormick was Chief Officer of the Pelham Police Department at the time of the incident and exercised supervisory and managerial authority over Defendant Miller.

**STANDARDS OF REVIEW**

**I.      Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS*

5

*Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  Here, both Parties properly filed summary judgment motions accompanied by a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Docs. 47-2, 50-1.)

## ANALYSIS

## I.   Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all claims remaining in this action. (Doc. 47.) The claims that remain are: Count One, a 42 U.S.C. § 1983 claim against Miller for excessive force; Count Two, an ordinary negligence claim against Miller; Count Three, a negligence per se claim against Miller; Count Four, a Section 1983 claim against City of Pelham for excessive force; Count Five, a Section 1983 claim against McCormick for excessive force; Count Six, a false imprisonment claim against Miller; Count Seven, a state

law unlawful arrest claim against Miller; Count Eight, an assault and battery claim against Miller; Count Nine, a negligence claim against McCormick; Count Ten, a negligence infliction of emotional distress claim against Miller; Count Eleven, an intentional infliction of emotional distress claim against Miller; and Counts Twelve and Thirteen, claims for wrongful death, damages, and attorneys' fees against all Defendants.  All claims against McCormick and Miller are against them in their individual and official capacities except for the Count Nine claim against McCormick, which is only against him in his official capacity.

### A. Plaintiffs' Section 1983 Fourth Amendment Excessive Force Claims against Miller, City of Pelham, and McCormick (Counts One, Four, Five)

*1. Excessive Force Claim against Miller in His Individual Capacity*

Miller asserts that he is entitled to qualified immunity from Plaintiffs' Section 1983 excessive force claim against him in his individual capacity (Doc. 47-1 at 6).  Qualified immunity allows "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).  "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  There are two steps in establishing that an officer was acting within his discretionary authority.  The first is establishing that the officer's action was undertaken pursuant to the performance of his official duties, and the second is establishing that the action was within the scope of the official's authority, in other words that it was "within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Maughon v. City of Convington*, 505 F. App'x 818, 822 (11th Cir. 2013) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

An officer's decisions to effect an arrest and to use force are actions taken pursuant to the performance of his official duties. *See Kesinger ex rel. Estate of Kesinger v Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004); *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003).  Plaintiffs argue that *Jones v. City of Atlanta*, 192 F. App'x 894 (11th Cir. 2006), clearly established that an officer's use of force outside of his jurisdiction is not within his

7

discretionary authority. The Court finds that *Jones* is distinguishable from this case. The officers in *Jones* were returning from lunch outside their jurisdiction when they encountered the plaintiff –a scenario which is distinct from the one here involving an officer on duty in his own jurisdiction who begins an investigation in his jurisdiction, near the city limits, and may have ended up outside of his jurisdiction at the time of the use of force. Furthermore, Miller was acting within the scope of his authority as a police officer when he searched for and encountered Wilson very near the county line in coordination with other officers. *See Maughon v. City of Covington*, 505 F. App'x 818, 822 (11th Cir. 2013) (finding that an officer who effected an arrest outside of his jurisdiction but very near the county line acted within the scope of his authority). The Court notes that neither Party's statement of facts as to which no genuine disputes exist even mentions the allegation that Miller was outside the city limits at the time of his altercation with Wilson. The Court finds that if a dispute of fact exists as to that issue, it is not material because Miller was acting within his discretionary capacity regardless. Therefore, Miller must establish that he did not violate a clearly established right of Wilson's.

An official seeking qualified immunity must establish that he did not violate "a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). An exception exists to this rule in the excessive force context "where the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997). In other words, in order for the exception to apply, a plaintiff "would have to show that every reasonable officer in [a defendant's] situation would know that the force he used was unlawful." *Merricks v. Adkisson*, Case No. 14-12801 at 22 (11th Cir. May 15, 2015) (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926-27 (11th Cir. 2000)).

8

The Supreme Court has held, "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tenn. v. Garner*, 471 U.S. 1, 7 (1985).  The Court further held, "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead," but "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.* at 11.

There are three factors discussed in *Garner*, *Graham v. Connor*, and subsequent Eleventh Circuit cases that a court should consider in determining the reasonableness of an officer's use of force: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. 386, 396; *see also Garner*, 471 U.S. at 8-9; *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011). "[I]f the suspect threatens the officer with a weapon . . . , deadly force may be used if necessary . . . , and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11–12.  Use of deadly force may not be reasonable where the officer himself created the situation giving rise to the threat of serious physical harm. *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1501-02 (11th. Cir. 1985) (abrogated on other grounds) (holding that use of deadly force was not reasonable where "any fear on the officer's part was the fear of retaliation against his own unjustified physical abuse").

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  But also, "[a]t summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances." *Fils*, 647 F.3d at 1288 (citing *Vinyard*, 311 F.3d at 1347-48).

Generally, in the context of Fourth Amendment excessive force claims, the Eleventh Circuit has held that "no bright line exists for identifying when force is excessive," instead

9

concluding "that unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Priester*, 208 F.3d at 926. Miller argues that he did not violate Wilson's clearly established rights, focusing on the reasonableness of his use of force in response to Wilson's threat to kill him, physical advances, and possession of an unidentified object in his left hand. Plaintiffs argue that the totality of the circumstances the Court should consider includes not only the encounter in the woods but Miller's decision to enter the woods alone, without any restraint tool except for a firearm, in search of a naked man who Plaintiffs suggest Miller should have presumed to be of diminished capacity. Plaintiffs argue that Miller acted unreasonably and created the circumstances giving rise to any fear of serious harm he may have experienced. (*See* Doc. 63 at 7-16.)

Plaintiffs argue that *Gilmere* and *Fils* clearly established that a reasonable officer cannot believe deadly force is justified where the officer has created the situation giving rise to the threat of serious harm feared by the officer. (Doc. 63 at 17.) In *Gilmere*, the Eleventh Circuit held that use of deadly force was not reasonable where "any fear on the officer's part was the fear of retaliation against his own unjustified physical abuse." 774 F.2d at 1501. In *Gilmere*, the decedent was older and smaller than the two arresting officers and was unarmed and clearly intoxicated. *Id.* at 1496-97. The decedent resisted arrest and attempted to flee. While the officers escorted him to the patrol car, they "beat him about the head." *Id.* The decedent then broke free of the officers' hold, attempting to flee, and was shot and killed by one of the officers. *Id.* The Eleventh Circuit determined that the beating was excessive and unnecessary and therefore gave rise to the decedent's flight. And in *Fils*, the plaintiff who was tasered by an officer did not threaten the officer's safety, did not disobey any warnings or directives from the officer, and in fact took a step *away* from the officer, and after being initially tased did not attempt to resist arrest but was nevertheless tased again. 647 F.3d at 1289. The Eleventh Circuit found that the force used against that plaintiff was unprovoked and excessive. *Id.*

Here, Miller's choice to enter the woods alone, with only a firearm, was unwise but did not give rise to or provoke Wilson's threats that ultimately caused Miller to fear for his

10

life. The evidence indicates that Miller made efforts to calm Wilson down, and there is no evidence Miller provoked Wilson in anyway or created a situation where Wilson's only choice was to submit to force, respond with force, or flee. Plaintiffs cite no binding case law, and the Court can find none, holding that Fourth Amendment law clearly requires that officers respond to situations like the one Miller faced with back-up officers and alternative methods of restraint.

In arguing that Miller violated Wilson's clearly established constitutional rights, Plaintiffs rely on *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988). In *Samples* the Eleventh Circuit upheld a district court's denial of summary judgment where the district court found that an issue of fact remained as to whether an officer used excessive force. *Samples* left open the question of whether an officer's use of force in a situation similar to the one here was excessive. Thus, *Samples* did not clearly establish Wilson's constitutional rights such that Miller was or should have been on notice that his conduct was unlawful. Rather, the Court finds that at the time of the incident, the most clearly established contours of Wilson's right to be free from excessive force were the three factors discussed in *Graham*, *Garner*, and subsequent Eleventh Circuit cases. *See Graham*, 490 U.S. 386, 396; *Garner*, 471 U.S. at 8-9; *Fils*, 647 F.3d at 1288.

The Court now considers the three *Garner* factors. As the Court has already held in its Order on Defendants' Motion to Dismiss, Miller had probable cause to arrest Wilson for public indecency, based on the facts alleged. (Doc. 70 at 5-6.) The Court now finds that the facts as established in the record also support that Miller had probable cause to arrest Wilson for public indecency.

The Court also finds that a reasonable officer in Miller's position could believe that he faced an immediate threat of serious injury based on Wilson's threat to kill him, possession of an unidentified object, and aggressive physical advances. Further, the Court finds that a reasonable officer in Miller's position could believe that Wilson was actively attempting to evade arrest by continuing to threaten Miller verbally and physically instead of heeding Miller's requests to calm down. This case is distinguishable from cases involving use of force where a suspect was cooperating with law enforcement. Here, Wilson made

verbal and physical threats toward Miller, acting erratically, holding an unidentified object in his left hand, and quickly closing the distance between the two.  Additionally, although there is no evidence that Miller provided an explicit warning to Wilson that he was about to shoot, Miller testified that he had his gun drawn, pointed at the ground, during the time that Wilson advanced toward him and that he told Wilson that he "did not want to do this" while attempting to calm him down.  Furthermore, Wilson's comments to Miller regarding his gun and his statement to the effect of, "You're going to [have to] kill me," indicate that Wilson was quite aware of the risk of imminent deadly force if he continued his advances.  The Court therefore finds that Wilson had adequate warning that Miller would use deadly force if necessary.

Finally, the Court finds that Miller's conduct was not so apparently unlawful as to fall within the exception to the "clearly established right" requirement.  The Court finds that Plaintiffs have not established that every reasonable officer in Miller's situation would know that the force he used was unlawful.  As discussed above, Miller had probable cause to arrest Wilson; Wilson made verbal and physical threats, holding an unidentified object in his left hand.  Reasonable officers perform searches and seizures without immediate backup all the time, and Plaintiffs have pointed to no binding case law holding that officers are required to carry tools of restraint other than a firearm at all times.  For those reasons, the Court finds that Miller's actions were not so obviously unconstitutional that no reasonable officer would have taken them in Miller's situation.

The Court finds that a reasonable officer in Miller's position could determine that, in light of the three *Garner* factors, use of deadly force was reasonable, and the Court finds no controlling and materially similar case that would have put Miller on notice that his actions were unconstitutional.  The Court finds, therefore, that Miller is entitled to qualified immunity as to Plaintiffs' Count One Section 1983 claim against him in his individual capacity.[1]

---

[1] Although hindsight is not "20/20," the Court does not mean to suggest that Miller handled the situation perfectly or that Wilson's tragic death was entirely unpreventable in view of the facts as established by the record.  However, the Court is required to apply established law, and, here, the Court finds that, under established law, Wilson's tragic and possibly preventable death does not give rise to a constitutional claim against Miller in his individual capacity.

> 2. *Excessive Force Claims against Miller and McCormick in Their Official Capacities and the City of Pelham*

The Court now considers Plaintiffs' Section 1983 excessive force claims against Miller and McCormick in their official capacities and against the City of Pelham.  When a plaintiff makes a Section 1983 claim against an officer in his official capacity that is "another way of pleading an action against an entity of which an officer is an agent." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1302 n. 3 (11th Cir.2005).  Municipalities (and local officials sued in their official capacities) can be sued directly under § 1983 for monetary relief "where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). Further, municipalities can be liable under Section 1983 for constitutional violations that occur pursuant to governmental custom, even where such custom has not been adopted as an official policy. *Id.* at 690-91.

Specifically, where a plaintiff asserts that a municipality is liable for failure to train or adequately supervise, the plaintiff must demonstrate that the failure was a "deliberate" or "conscious" choice by the municipality.  *City of Canton*, 489 U.S. at 388-89. "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees," a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton*, 489 U.S. at 388-89).  "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Id.* "[T]he Supreme Court has given only a hypothetical example of a need to train being 'so obvious' without prior constitutional violations: the use of deadly force where firearms are provided to police officers." *Gold*, 151 F.3d at 1350 (citing *City of Canton*, 489 U.S. at 390 n. 10).

13

Here, Plaintiffs' own evidence, a document reflecting the training Miller received, indicates that on June 9, 2011, Miller was trained in firearms and use of deadly force. (Doc. 52-1 at 4-5.) Thus, there is no genuine issue of fact as to whether Pelham Police Department failed to train Miller on firearms and the use of deadly force.

Furthermore, Plaintiffs point to no evidence that the City of Pelham made a deliberate choice not to train officers in a particular area where it knew such training was needed. Plaintiffs' rest their argument on the fact that Miller was not specifically trained on Pelham's policy on dealing with persons with diminished capacity. Miller testified that he had read the Department policy on dealing with persons with diminished capacity, but the evidence does not indicate that he was trained specifically on the policy. (Doc. 56 at 20.) A police department, however, is not required to have such a policy, much less train officers regarding such a policy, unless the department knows of a need to train in that particular area. *Gold*, 151 F.3d at 1350.

Plaintiffs' only evidence that the Pelham Police Department knew of such a need is the Department's own policy manual, which states that the "final policy maker of the agency knows to a moral certainty" that officers will face certain "high-risk critical tasks" that could lead to "a physical or constitutional injury," including dealing with persons with diminished capacity. (Doc. 42-5 at 60-61.) The Eleventh Circuit has held:

> It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens . . . . *City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.

*Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (quoting *Walker v. City of New York*, 974 F.2d 293, 299-30 (2d Cir. 1992)). *Sewell* dealt with an officer's sexual molestation of a detainee, a scenario where the proper response was so obvious that the failure to train could not have been a cause of the injury. Here, the Court does not find that the proper response was so obvious that training on dealing with persons of diminished

14

capacity should not have been necessary, but does find that the bare statements in the City's policy manual are not sufficient, alone, to show that there was a likelihood that failure to train would result in an officer making the wrong decision.

Plaintiffs' also cite the deposition of Rod Williams, arguing that he admitted "that Pelham does have incidents of naked people running around." (Doc. 63 at 19.) However, the Court cannot find the transcript of this deposition in the record. (*See* Docket.) Plaintiffs have produced no evidence of similar incidents that would have put Pelham on notice of the need for training beyond the training it did provide and having officers read the policy on persons with diminished capacity. For those reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' Section 1983 claims against Miller and McCormick in their official capacities and against the City of Pelham.

### 3. *Excessive Force Claim against McCormick in His Individual Capacity*

Plaintiffs' also assert a Section 1983 claim against McCormick in his individual capacity under a theory of supervisory liability. In Section 1983 actions, supervisory officials are not liable under a theory of vicarious liability, or *respondeat superior*. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Officials may be liable on a theory of supervisory liability. *Id.* To state a claim under a theory of supervisory liability, a plaintiff must allege:

> either (1) a "custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . facts [that] support an inference that the supervisor[s] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse [that] put[] the responsible supervisor on notice of the need to correct the alleged deprivation and [that] he fail[ed] to do so."

*West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007) (quoting *Cottone*, 326 F.3d at 1360).

As the Court has already found with regard to Plaintiffs' claims against the City of Pelham and Miller and McCormick in their official capacities, Plaintiffs have produced no evidence of a custom or policy that resulted in deliberate indifference to Wilson's constitutional rights or a history of widespread abuse that would have put McCormick and others on notice of the need for more training. Furthermore, Plaintiffs have produced no evidence that McCormick was directly involved in the incident or directed a subordinate to

act unlawfully. For those reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' Section 1983 claim against McCormick in his individual capacity.

### B. Plaintiffs' State Law Claims

Having found that Plaintiffs have failed to survive summary judgment on their Section 1983 claims, which fall within this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See, e.g., McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) ("The Court may decline to exercise jurisdiction over state-law claims where the Court has dismissed all the federal claims over which it has original jurisdiction."); *see also* 28 U.S.C. § 1367(c)(3). Accordingly, Counts Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen are **DISMISSED WITHOUT PREJUDICE**.

### C. Plaintiffs' Motion for Partial Summary Judgment

The Court also addresses Plaintiffs' Motion for Partial Summary Judgment (Doc. 50). Plaintiffs argue that they are entitled to judgment as a matter of law because Defendants violated a ministerial duty to follow the Pelham Police Department's policy on responding to persons with diminished capacity and because Miller acted with actual malice. (Doc. 50 at 2.)

First, the term "ministerial duty" is one used in the context of determining whether a defendant is entitled to official immunity under Georgia state law. Thus, to the extent Plaintiffs argue that Defendants are not entitled to official immunity, that argument only applies to Plaintiffs' state law claims, not the remaining federal claim against Miller asserted in Count One. Plaintiffs' other argument –that Miller acted with actual malice – also relates only to their state law claims and the issue of whether Miller would be entitled to official immunity under state law. Having dismissed Plaintiffs' state law claims, the Court **DENIES without prejudice as moot** Plaintiffs' Motion for Partial Summary Judgment (Doc. 50) as to some of their state law claims.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 47) is **GRANTED** as to Plaintiffs' Section 1983 claims against Miller, McCormick, and the City of Pelham. The Clerk is directed to enter judgment on those claims in favor of Defendants

Miller, McCormick, and the City of Pelham.  Plaintiffs' Motion for Partial Summary Judgment (Doc. 50) is **DENIED without prejudice**.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and those claims are **DISMISSED without prejudice**.

  **SO ORDERED**, this <u>14th</u> day of September, 2015.

            <u>/s/ W. Louis Sands      </u>
            **W. LOUIS SANDS, SR. JUDGE**
            **UNITED STATES DISTRICT COURT**